**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MELVENIA HOWIE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ANDREW SAUL, | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | NO.  19-5344 |

**MEMORANDUM OPINION**

**Timothy R. Rice**                                                                                   **December 28, 2020**
**U.S. Magistrate Judge**

      Plaintiff Melvenia Howie alleges the Administrative Law Judge ("ALJ") erred in denying her Supplemental Social Security Income ("SSI") and Disability Insurance Benefits ("DIB") by improperly weighing the medical opinion evidence when assessing her residual functional capacity ("RFC").[1]  Pl. Br. at 1.  Because the ALJ failed to sufficiently explain the weights she assigned to multiple medical source opinions, I remand for further consideration.[2]

      Howie alleges she is unable to work due to a progressive back condition that has become increasingly painful and led to weakness in her right leg and a burning sensation in her right foot. R. at 46-47.  Howie was involved in a car accident in November 2015 while she was working as

---

[1]     A claimant's RFC reflects "the most [she] can still do [in a work setting] despite [her] limitations."  20 C.F.R. §§ 404.1545(a), 416.945(a).

[2]     Howie consented to jurisdiction of a United States Magistrate Judge on January 22, 2020 (doc. 11), pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 72, Local Rule 72.1, and Standing Order, In re Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018).  See also Roell v. Withrow, 538 U.S. 580, 584 (2003) (consent to Magistrate Judge jurisdiction can be inferred from failure to object after notice and opportunity).

a Philadelphia Truancy Representative, effectively a traveling court reporter for truancy cases. Id. at 47, 50, 62-64.  Although she returned to that position after a course of treatment that included physical therapy and injections,[3] id. at 443-63, 1188-1257, 468-69, 534, she quickly left again, claiming she was no longer physically able to perform her job, id. at 53-54 (testimony that she had "problems just sitting" and that when she "went to stand up, [her right leg] buckled"). She alleges that, as of June 29, 2016 (seven months after her accident), she had become fully disabled.  Id. at 19.

Howie sued the city, and the parties litigated whether her condition was attributable to her 2015 workplace accident or a pre-existing medical condition.  See, e.g., id. at 1513.  For the purpose of SSI and DIB benefits, however, the cause of the impairment is irrelevant;[4] the only question is whether she can prove its functional effects render her unable to perform substantial gainful activity, 20 C.F.R. §§ 404.1505(a), 416.905(a).

In her November 2018 opinion, the ALJ found Howie suffered from severe degenerative disc disease, but nonetheless retained the ability to perform a limited range of sedentary work.[5] Id. at 23.  At Howie's August 2018 ALJ hearing, a Vocational Expert ("VE") had testified that, with that limited sedentary RFC, Howie would be able to perform her prior work as it is generally performed (although not as Howie actually performed it).  Id. at 66.  Based on this testimony, the ALJ concluded Howie was not disabled because she could perform her prior work

---

[3] There is some evidence in the record that she never returned to full duties, but rather a modified version of her former job. Id. at 1513 (Howie was "returned to work modified-duty").

[4] There is an exception to this rule; causation is irrelevant as long as the disability is not attributable to the claimant's felonious behavior and/or the disability did not arise in prison.  20 C.F.R. §§ 404.1506, 416.906.

[5] The ALJ found Howie could perform sedentary work that required only occasional postural movements and no climbing ladders, ropes, or scaffolds, or exposure to unprotected heights.  R. at 23.

as it is generally performed or, alternatively, perform an unskilled job as a data entry clerk. Id. at 32.

The ALJ referenced 11 medical source opinions in her decision, but only six are relevant here. They are: (1) a September 2016 opinion from Dr. Stuart Gordon, rendered in connection with Howie's then-pending claim for workplace disability; (2) a January 2017 opinion from Dr. Miteswar Purewal, Howie's treating pain management physician; (3) a May 2017 opinion from Dr. David Ferner, who reviewed Howie's medical records on behalf of the Social Security Administration ("SSA"); (4) an October 2017 opinion from Dr. Marilyn Howarth, issued in connection with Howie's workplace disability litigation; (5) a November 2017 opinion from Dr. Brent Weierman, issued in connection with that same litigation; and (6) a December 2017 opinion from Dr. Randall Smith, also issued in connection with Howie's workplace disability litigation. Id. at 31-32.

The ALJ gave "great weight" to only one medical source opinion, the opinion from the SSA reviewing physician, Dr. Ferner, but still designed an RFC less restrictive than his recommendation. She explained that she gave Dr. Ferner's opinion "great weight" because it was consistent with and supported by the record. Id. at 32. She disregarded his recommendation that she include a sit/stand option in her RFC, however, on the basis that that particular recommendation was not supported by the objective medical evidence. Id. Dr. Ferner's report included a summary of the medical evidence he relied upon, which included MRIs showing "degenerative disc and facet joint disease" as well as "lumbar nerve root impingement."[6] Id. at 77.

---

[6] It is not clear whether Dr. Ferner ever reviewed the September EMG test that showed lumbar radiculopathy. EMG, or electromyography, uses surface electrodes, needle electrodes, and other devices to record the activity of muscles at rest, during contractions and during electrical stimulation. Dorland's Illustrated Medical Dictionary (32nd ed. 2012) ("Dorland's") at

3

The ALJ gave "partial weight" to two medical source opinions. She explained Dr. Gordon's September 2016 opinion was given "partial weight" because, although it was based on an in-person examination and full review of the medical record, it was created for the purposes of Howie's workplace disability litigation. Id. at 31. She explained that Dr. Howarth's October 2017 opinion was issued with the benefit of all medical records, but utilized a different legal standard because it was issued in conjunction with Howie's workplace disability litigation. Id.

The ALJ's explanation regarding the full medical record review available to Drs. Gordon and Howarth contrasts with the records she found were available to Howie's treating pain management physician, Dr. Purewal. Id. The ALJ gave "little weight" to Dr. Purewal's July 2017 opinion and the November and December 2017 opinions of Drs. Weierman and Smith. Id. She explained discounting Dr. Purewal's opinion by stating that he did not have the benefit of reviewing all the medical records and he had based most of his opinion on Howie's subjective complaints. Id. She dismissed the opinions of Drs. Weierman and Smith together, explaining that they were: (1) created for the workplace litigation; (2) inconsistent with the medical record; (3) on an issue specifically reserved for the Commissioner; and (4) missing specific functional limitations. Id.

The ALJ's treatment of the medical source opinions is internally inconsistent, contrary to the binding regulatory standards, and impenetrable in its analysis of the medical record. I am unable to discern the basis on which she found all the opinions rejecting Howie's claims consistent with the medical record and all the opinions substantiating them inconsistent with it. The determinative limitation for Howie's claim is sitting; if Howie is limited to sitting less than

---

602. "Lumbar radiculopathy is a disease of the lumbar nerve roots, such as from disk herniation or compression . . . with lower back pain and often paresthesias." Id. at 1571.

4

six hours per day, she is disabled for SSA purposes.  Id. at 67 (VE testimony that, if Howie can sit for less than six hours per work day, there is no work available to her).

Filed in February 2017, id. at 17, the July 2017 treating physician opinion issued by Dr. Purewal is entitled "controlling weight" only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record.[7]  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  If it does not merit controlling weight, the ALJ must weigh it based on the same regulatory factors she must consider for the other medical source opinions.  20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6), 416.927(c)(2)(i)–(ii), (c)(3)–(6) (length and frequency of the treatment relationship, "nature and extent of the treatment relationship," the opinion's "supportability" and consistency with the record as a whole, the opining physician's specialization, and factors such as the opining physician's familiarity with the standards of the Social Security program).

However, the only regulatory factors the ALJ appears to have considered are the opinions' supportability/consistency with the medical record and the physicians' familiarity with SSA disability standards.  She did not give any special credence to Dr. Purewal's opinion, despite his treatment relationship with Howie.  Id. at 31.  Dr. Purewal opined that Howie should not return to work in July 2017 because her pain could be controlled only with a medication regimen that caused such cognitive disfunction she could not perform her job.  Id. at 565-66.  Because pain medications are well-known to cause sedation and her job entailed driving and transcribing, this make intuitive sense.  Id. at 47.

---

[7]   Because Howie filed her claims before March 27, 2017, her medical source opinions were assessed under these sections rather than 20 C.F.R. §§ 404.1520c, 416.920c.

The ALJ gave two explanations for discounting Dr. Purewal's opinion: (1) his failure to review all medical records; and (2) his reliance on Howie's subjective claims. Id. at 31. The ALJ was entitled to discount a medical opinion based on subjective complaints she discredits. See Kanakis v. Comm'r of Soc. Sec., 649 F. App'x 288, 292 (3d Cir. 2016) (upholding ALJ decision to discredit medical source opinion that was "primarily" based on claimant's "subjective assertions" and inconsistent with other evidence).

The ALJ, however, also failed to provide substantial evidence for discounting Howie's claims. She noted that Howie: (1) lives on her own and manages a household; (2) did not consistently participate in physical therapy; (3) had not received epidural injections since 2016; (4) did not require surgery; and (5) walked without an assistive device. Id. at 30. This reasoning, however, ignores: (1) Howie's testimony that she relies on her sons to mop, take care of her lawn, and take out her garbage, id. at 59; (2) the insurance company's denial of coverage for further physical therapy, id. at 886, and epidural injections, id. at 562; (3) Dr. Smith's recommendation for surgical evaluation, id. at 831; and (4) the fact that Howie did walk with a cane, id. at 55.

In terms of Dr. Purewal's failure to review all the medical records, it is unclear which medical information the ALJ thinks Dr. Purewal would have benefited from reviewing. The medical records in this case show that, after her November 2015 car accident, Howie participated in physical therapy and received injections until her insurance company and finances made continuing those treatments impossible. Id. at 443-63, 468-69, 534, 551-52, 577, 582, 584, 589-93, 789, 795, 1188-1257, 1587. A January 2016 MRI showed degenerative disc disease that included multiple disc bulges and nerve root involvement in the lower back, id. at 431-32, a March 2016 EMG was normal, id. at 424-25, an August 2016 MRI confirmed degenerative disc

disease with nerve root compromise in the lower back, id. at 883, and a September 2016 EMG showed radiculopathy in the lower back, id. at 879.  Dr. Purewal was aware of the MRIs, which he accurately described in his August 2016 treatment note, and was responsible for sending her to obtain the September 2016 EMG.  Id. at 568.  He did not have access to the results of that September 2016 EMG, but that testing confirmed radiculopathy.  Id. at 424-25.  In other words, the objective medical evidence Purewal was unable to review would only have made his opinion more restrictive.  To the extent the ALJ meant that Dr. Purewal did not have the benefit of the opinions of the other medical sources, her treatment of Dr. Purewal's opinion was inconsistent with her treatment of the opinions of Dr. Ferner and Dr. Gordon.

The ALJ gave "great weight" to the May 2017 opinion of reviewing SSA physician Dr. Ferner.  Id. at 32.  Even Dr. Ferner, however, was not given total deference.  Dr. Ferner recommended a sit-stand option.  Id. at 76.  Thus, even the opinion to which the ALJ gave "great weight" suggested that Howie's sitting was affected by her medically determinable impairments.  Despite giving his overall opinion "great weight," the ALJ found just the sit-stand recommendation "inconsistent" with the medical records, without identifying which record it was inconsistent with or how.  Id. at 32.  Like Dr. Purewal, Dr. Ferner did not have the benefit of most of the medical source opinions, since he opined before Drs. Howarth, Weierman, and Smith.  Id. at 566, 829, 885, 1507.  Nonetheless. the ALJ did not weigh this timing against Dr. Ferner's opinion she did against Dr. Purewal's.  Id. at 32.  Further, Dr. Ferner's opinion was not discounted based on his failure to examine Howie.  Id. at 32; 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).

In contrast, the ALJ gave additional weight to the September 2016 opinion of examining physician Dr. Gordon based on his "full examination and review of the record" even though he

7

did not review the September 2016 EMG report (it had been completed only two days earlier) or the subsequent physician opinions. Id. at 31, 1327. Nonetheless, the ALJ gave Dr. Gordon's opinion "partial weight," explaining only that it was prepared in connection with Howie's workplace litigation and intruded on issues reserved to the Commissioner.[8] Id. at 31.

The ALJ also gave "partial weight" to the opinion of Dr. Howarth, who issued her form denying disability and two-page letter explaining her decision in October 2017. Id. at 31. Dr. Howarth reviewed Dr. Gordon's and Dr. Purewal's opinions and the September 2016 EMG, but never examined Howie. Id. at 1507, 1511, 1513. Further, her carefully-worded letter does not appear to support the ALJ's RFC over Howie's claims; it states only that "all abnormalities noted on the MRI are chronic degenerative changes." Id. at 1513. Dr. Howarth argues that Howie suffered mild sprains in her neck and lower back from the workplace car accident, as documented by MRIs taken close to the time of the accident, but that any other problems found on later MRIs are attributable to Howie's long-term degenerative changes. Id. The ALJ gave Dr. Howarth credit for issuing her opinion "after review of the record," but noted that it was created for a different legal proceeding with different legal standards in mind and intruded on issues reserved for the Commissioner. Id. at 31. Although these are valid bases on which to discount medical source opinions, the ALJ's analysis is inconsistent with the weight given to the next two opinions.

---

[8] Dr. Gordon appears to be the only one of the six physicians who reviewed the January and August 2016 MRIs, which showed nerve root compression in the lumbar spine that was "greater on the left than right," to suggest that the left-sided MRI findings contradicted Howie's claims of right-sided symptoms. Id. at 1327. Dr. Fermer, whose opinion was given "great weight," and Dr. Howarth, whose opinion was given the same "partial weight" as Dr. Gordon's, both appear to have accepted the MRIs as supporting Howie's right-sided symptoms. Id. at 77, 1513.

The ALJ gave "little weight" to the two most recent medical opinions which were both based on examinations and full review of the record by specialists opining in their field of expertise. Id. at 31. The ALJ explained the opinions issued by Drs. Weiderman and Smith in November and December 2017: (1) were created in connection with Howie's workplace disability litigation; (2) were not consistent with the record; (3) opined on issues reserved for the Commissioner; and (4) included no specific limitations. Id. at 31.

Neither Dr. Weierman nor Dr. Smith based their opinions on Howie's subjective complaints. Dr. Smith not only measured relative right-sided weakness with specialized orthopedic tests that confirmed Howie's symptoms, he literally measured her right calf muscle as smaller than her left, demonstrating muscle atrophy. Id. at 830. Dr. Weierman explained that Howie was improving with PT and pain injections, but that those treatments had been cut off by insurance. Id. at 886. He described her right-sided symptoms as consistent with the findings on her MRIs. Id. Drs. Smith and Weierman both reviewed the medical records as well as the opinions from Drs. Purewal, Gordon, and Howarth. Id. at 829, 886.

Other than their alleged inconsistency with the medical records, there is no discernible principle to the different weights the ALJ assigned the medical source opinions. The ALJ failed to offer an explanation of how the opinions that agreed with her RFC were consistent with the medical records and those that did not were not.

I must accept all ALJ findings of fact that are supported by substantial evidence, meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000); see also 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence"). I "review the record as a

whole to determine whether substantial evidence supports a factual finding," Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014), but may not "re-weigh the evidence or impose [my] own factual determinations," Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). Remand is appropriate only if ALJ error affected the outcome of the case.  See Rutherford, 399 F.3d at 553.

Unfortunately, the ALJ here never identified which evidence was inconsistent with the medical opinions she discounted as inconsistent with the medical record.  Gross v. Comm'r Soc. Sec., 653 F. App'x 116, 122 (3d Cir. 2016) (remanding when ALJ failed to "explain[] why she credit[ed] some evidence or medical opinions over others."); Burnett v. Comm'r of Soc. Sec. Admin, 220 F.3d 112, 121 (3d Cir. 2000) (opinion merits remand when "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored").  Moreover, despite my independent review of the record, I cannot figure it out.  This renders me unable to provide "meaningful judicial review" and warrants remand.  Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

An appropriate Order accompanies this opinion.